**Daniel C. RUSSO, Petitioner,**

v.

**UNITED STATES POSTAL SERVICE, Respondent.**

**No. 01–3154.**

United States Court of Appeals, Federal Circuit.

March 26, 2002.

Linda Hanten, Law Offices of Harrigan & Hanten, of Washington, DC, argued for petitioner.

Brian M. Reimer, Attorney, Civil Practice, U.S. Postal Service, of Washington, DC, argued for respondent. With him on the brief were Stuart E. Schiffer, Assistant Attorney General; and Brian S. Smith, Attorney, Civil Division, Commercial Litigation Branch, Department of Justice, of Washington, DC. Of counsel were David M. Cohen, Director; and Kathryn A. Bleecker, Assistant Director.

Before NEWMAN, RADER, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

Daniel C. Russo petitions for review of the final decision of the Merit Systems Protection Board ("Board") that sustained his removal by the United States Postal Service ("agency") from the position of Supervisor Maintenance Operations, EAS–16. *Russo v. United States Postal Serv.*, 87 M.S.P.R. 533 (2000). Mr. Russo was removed from his position for conduct unbecoming a postal supervisor. We affirm-in-part, reverse-in-part, and remand.

## BACKGROUND

### I.

Mr. Russo was employed by the agency in Philadelphia, Pennsylvania. The events

that gave rise to his removal took place on May 26, 1999. They are not in dispute. That day, Mr. Russo, who is white, went to the Maintenance Stock Room, Tools and Parts Counter, with John Kendrick, a co-worker, who also is white. The purpose of the visit was for Mr. Russo to sign for some replacement tools that Mr. Kendrick needed. Mr. Kendrick ordered the tools from Anthony Torrance, who was at the counter. While waiting for Mr. Torrance to get the tools, Mr. Russo and Mr. Kendrick were approached by Roosevelt Young, who is black and who worked in the Stock Room. Mr. Young was returning from a break. Seeing Mr. Russo and Mr. Kendrick at the counter, he asked if he could help them. Mr. Russo replied, "I could use a shoe shine." Mr. Russo and Mr. Kendrick laughed at the remark.

Mr. Young was offended by Mr. Russo's remark, and he reported the incident to David Canty, Manager Maintenance Operations, who was Mr. Russo's immediate supervisor. Mr. Young told Mr. Canty that he considered Mr. Russo's remark to be racist, derogatory, and degrading. Mr. Canty spoke to Mr. Russo, who admitted that he had made the remark. Mr. Russo indicated, however, that he had apologized to Mr. Young. On June 1, 1999, Mr. Russo submitted a written memorandum to Mr. Canty concerning the incident. In the memorandum, Mr. Russo stated that he had made the shoe shine remark to Mr. Young but that he was "only trying to lighten things up with some humor." That same day, Mr. Canty interviewed Mr. Young about the incident. Mr. Young stated that he was still upset about the remark and that Mr. Russo had not apologized to him, contrary to what Mr. Russo had said.

On July 15, 1999, Mr. Canty issued to Mr. Russo a Notice of Proposed Removal. The Notice stated that the reason for the removal action was "Conduct Unbecoming a Postal Supervisor." Noting that Mr. Young had told him that Mr. Russo had twice said he "could use a shine," Mr. Canty stated: "Mr. Young complained to me about your comment to him and that he was extremely upset about the remarks and considered them to be racist in nature and very degrading to him as a human being." Mr. Canty added that Mr. Young was also upset because Mr. Russo had not apologized to him. The Notice of Proposed Removal referred to the fact that in 1997 Mr. Russo had attended a seminar on interpersonal skills. His attendance was the result of an agreement between the agency and the American Postal Workers Union settling a charge that had been brought against the agency based upon allegedly unacceptable conduct by Mr. Russo towards another employee. The Notice of Proposed Removal also stated that, as a supervisor, Mr. Russo was responsible for ensuring that all employees under his jurisdiction were "treated with dignity and respect" and that he not use "words, slogans or phrases belittling employees because of the color of their skin."

On September 9, 1999, Joseph Apice, Maintenance Manager, issued a Letter of Decision removing Mr. Russo from his position for conduct unbecoming a postal supervisor. In the Letter of Decision, Mr. Apice concluded that the "charges" stated in the Notice of Proposed Removal were supported by the evidence. He wrote to Mr. Russo, "I find that your remark to Mr. Young was indeed racist." In determining the penalty, Mr. Apice reviewed the applicable *Douglas* factors. *See Douglas v. Veterans Admin.*, 5 MSPB 313, 5 M.S.P.R. 280, 305–306 (1981). Mr. Apice addressed first the nature and seriousness of the offense. In that regard, he stated: "Remarks of a racist nature are not tolerated within the Postal Service. The U.S. Postal Service has a responsibility to ensure that

all employees have a safe work environment free from remarks that are racist in nature. Mr. Young became humiliated concerning your remark to him and considered it racist."

Continuing his consideration of the pertinent *Douglas* factors, Mr. Apice stated that he had taken into account the fact that Mr. Russo had previously been demoted for "Improper Conduct and Misuse of Postal Equipment." As far as Mr. Russo's length of service and overall employment record were concerned, Mr. Apice wrote, "I have taken into consideration your 26 years of service, your performance on the job, dependability, and ability to get along with fellow employees. I find that these elements do not warrant any mitigation based upon the seriousness of the offense and disregard of the ethnic background of Mr. Young." In deciding to remove Mr. Russo, Mr. Apice also took into account the effect of the offense upon Mr. Russo's ability to perform his duties at a satisfactory level and upon his supervisors' confidence in his abilities. In that regard, Mr. Apice stated: "Your action displays an unsatisfactory level of your ability to perform your assigned duties [b]ased upon your display of bias and I have no confidence in your ability to perform your assigned duties and supervise employees in an unbiased manner."

## II.

Mr. Russo appealed his removal to the Board. Following a hearing, at which Mr. Russo, Mr. Young, Mr. Kendrick, Mr. Canty, and Mr. Apice all testified, the administrative judge ("AJ") issued an initial decision sustaining the agency's action. *Russo*, 87 M.S.P.R. 533. After finding the facts set forth above, the AJ turned to the question of whether the agency had proved the charge against Mr. Russo by a preponderance of the evidence. *See Bur-*

*roughs v. Dep't of the Army*, 918 F.2d 170, 172 (Fed.Cir.1990). She found that it had. In so doing, she rejected Mr. Russo's contention that the agency had not proved its charge because it had failed to establish that he had made a racist remark:

> Throughout the hearing and in his closing argument, the appellant denied that he used an ethnic slur. However, the charge against appellant is conduct unbecoming a postal supervisor, not using ethnic slurs. Thus, *the agency did not have to show that the appellant used an ethnic slur* [,] only that the appellant's conduct under the circumstances was conduct unbecoming a postal supervisor.

*Russo*, op. at 1307 (emphasis added). The AJ made no finding as to whether Mr. Russo's comment was racist in nature.

The AJ upheld the charge of conduct unbecoming a postal supervisor based upon the evidence presented at the hearing concerning Mr. Russo's actions towards Mr. Young. She explained that

> [t]he unrebutted testimony of Mr. Young described the circumstances of the comment and the fact that the appellant and Mr. Kendrick reacted by laughing and snickering when the comment was made. Mr. Young's written statement and his testimony indicated that he was offended and upset by the statement. Even the appellant stated in his written submissions to the agency that Mr. Young appeared to be upset. Mr. Kendrick admitted in his testimony that he was surprised that the appellant would make such a remark. Although the appellant stated that he was kidding, his immediate comment to Mr. Kendrick, "I guess I'm in trouble again" indicated that, at the very least, he had had some awareness that he should not have made such a remark to Mr. Young.

*Id.*

After rejecting Mr. Russo's affirmative defenses and determining that disciplin-

ary action against Mr. Russo promoted the efficiency of the service, the AJ turned to the question of whether the penalty of removal was reasonable. She determined that it was. In addressing what she considered to be the pertinent *Douglas* factors, the AJ focused on Mr. Apice's testimony that "the sustained charge was serious and that appellant had shown disregard for the ethnic background of Mr. Young." *Russo*, slip op. at 11. The AJ noted that Mr. Apice testified that the agency was responsible for maintaining a workplace that was "free from remarks that are racist in nature." *Id.* The AJ noted also that Mr. Apice found the shoe shine remark to be intentional because Mr. Russo repeated it. *Id.*

The AJ's initial decision became the final decision of the Board when the Board denied Mr. Russo's petition for review for failure to meet the criteria for review set forth at 5 C.F.R. § 1201.115. *Russo v. United States Postal Serv.*, 87 M.S.P.R. 533 (2000). This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## ANALYSIS

Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000). *See Kewley v. Dep't of Health & Human Servs.*, 153 F.3d 1357, 1361 (Fed.Cir.1998).

On appeal, Mr. Russo makes two arguments. The first is that the agency did

not prove the charge of conduct unbecoming a postal supervisor. The second is that the penalty of removal was unreasonable. We address these contentions in turn.[1]

## I.

The gist of Mr. Russo's first argument is that, in order to sustain its charge against him, the agency was required to establish by a preponderance of the evidence that he made a racist comment to Mr. Young. Accepting the Board's findings of fact, Mr. Russo claims that since the Board did not find that he made such a comment, the charge was not sustained.

 Mr. Russo's argument is premised on the proposition that when an agency makes a general charge against an employee, it must specify the conduct that supports the charge. Mr. Russo is correct. When an agency proposes to discipline an employee, it must notify the employee of the conduct with which he is charged "in sufficient detail to allow the employee to make an informed reply." *Pope v. United States Postal Serv.* 114 F.3d 1144, 1148 (Fed.Cir.1997). Pertinent to this case, we have stated that "[t]he charge of 'unacceptable and inappropriate behavior' is entirely unspecific; when an agency uses such general charging language, the Board must look to the specification to determine what conduct the agency is relying on as the basis for its proposed disciplinary action." *Lachance v. Merit Sys. Protection Bd.*, 147 F.3d 1367, 1371 (Fed.Cir.1998).

 Mr. Russo points out that when the agency removed him for conduct unbecoming a postal supervisor, it specified that he

---

**1.** Mr. Russo also argues that the agency deprived him of due process by failing to adequately inform him of the policy that his con- duct allegedly violated. We have considered this argument and have found it to be without merit.

had made a racist comment to Mr. Young. Mr. Russo further points out that the AJ declined to find that his comment was racist. According to Mr. Russo, that means that the charge against him was not sustained and that, therefore, the decision of the Board must be reversed. We do not agree.

It is true that Mr. Apice's Letter of Decision stated that Mr. Russo made a racist remark to Mr. Young. It also is true that the Board did not find that such a remark was made. It does not follow from that, however, that the charge of conduct unbecoming a postal supervisor was not proved.

As reflected in Mr. Canty's Notice of Proposed Removal and Mr. Apice's Decision Letter, the agency charged Mr. Russo with improper conduct that offended Mr. Young, and it labeled that conduct racist. The facts found by the Board are consistent with the agency's version of the events of May 26th. Thus, the Board found that what the agency said took place on May 26th did take place. Under these circumstances, we have no difficulty upholding the Board's finding that, as charged by the agency, Mr. Russo's comment to Mr. Young and his related actions (laughing, snickering and failing to apologize) were improper and constituted conduct unbecoming a postal supervisor even though the Board declined to find that Mr. Russo's comment rose to the level of an ethnic or racial slur.

We view this case as similar to *Kennedy v. United States Postal Service*, 75 M.S.P.R. 281 (1997). There, Donald Kennedy was demoted from the position of Manager, Customer Service, EAS–21, to the position of City Letter Carrier, PS–5, for "improper conduct." 75 M.S.P.R. at 282. The conduct for which Mr. Kennedy was demoted was sending the following facsimile message to another Manager of Customer Service: "This is the report no one knows about. Took most of the day to complete. If you want this broken down into weeks, have Brenda fire up her slaves." *Id.* at 283. Several black employees who happened to read the message claimed to be extremely upset about its reference to "slaves" and felt that it was a slur directed at them because of their race. After the incident was reported to agency officials, Mr. Kennedy was demoted. On appeal, the Board determined that, while Mr. Kennedy's behavior "was not tainted with racial animus," it was "inappropriate." The Board sustained the charge of improper conduct, but mitigated the penalty to a five-day suspension. *Id.* at 288. Thus, the Board will sustain a general charge of misconduct when it finds that an employee engaged in inappropriate behavior, even though it does not find that the behavior rose to the level of impropriety asserted by the agency. Here, the agency charged that Mr. Russo acted improperly and that his conduct was racist. The Board agreed with the agency that Mr. Russo acted improperly. However, it chose not to conclude that his improper conduct warranted the label racist. Consistent with *Kennedy,* we will not disturb the finding of the Board that the agency proved the charge that Mr. Russo engaged in conduct unbecoming a postal supervisor.

## II.

We turn now to Mr. Russo's challenge to the penalty. What is important here is the fact that the agency imposed the maximum penalty because it determined that Mr. Russo acted improperly by making a racist comment. In other words, the agency imposed the maximum penalty because of its view as to the seriousness of the offense. That is clear from Mr. Canty's Notice of Proposed Removal, Mr. Apice's Letter of Decision, the evidence ad-

duced at the hearing, and the findings of the Board. However, the Board did not find that Mr. Russo engaged in conduct unbecoming a postal supervisor by making a racist comment. Rather, it found that he engaged in such conduct by making a comment that was offensive to Mr. Young.

We view this case as analogous to the situation in which the Board sustains fewer than all of the charges that an agency brings against an employee. We have stated that "[w]hen the Board sustains fewer than all of the agency's charges, the Board may mitigate to the maximum reasonable penalty so long as the agency has not indicated either in its final decision or during proceedings before the Board that it desires that a lesser penalty be imposed on fewer charges." *Lachance v. Devall,* 178 F.3d 1246, 1260 (Fed.Cir.1999). Here, the agency did not indicate in the Letter of Decision or before the Board that it desired the imposition of a lesser penalty if the Board determined that Mr. Russo had acted improperly but, at the same time, failed to find that he had made a racial slur. Under these circumstances, we conclude that, in accordance with *Lachance,* the case should be remanded to the Board for imposition upon Mr. Russo of a penalty less than removal, *see Kennedy, supra,* based upon the Board (i) having found that Mr. Russo engaged in conduct unbecoming a postal supervisor, but (ii) declining to find that he made a racial slur.[2]

## CONCLUSION

For the foregoing reasons, we affirm the decision of the Board that Mr. Russo engaged in conduct unbecoming a postal supervisor. However, we reverse the decision of the Board sustaining the agency's imposition of the penalty of removal. The case is remanded to the Board so that, in accordance with *Lachance,* the Board may mitigate Mr. Russo's punishment to a penalty that is less than removal and that is commensurate with the findings of the Board.

*AFFIRMED–IN–PART, REVERSED–IN–PART, and REMANDED.*

---

**2.** Mitigation to a lesser penalty is particularly appropriate in this case. The linchpin for the agency's imposition of the penalty of removal was its determination that Mr. Russo made a racist comment to Mr. Young. The Board's decision, which failed to find that such a comment was made, removed that linchpin.