# United States Court of Appeals for the Federal Circuit

---

**ALBERTO GARCIA,**

*Petitioner*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**

*Respondent*

---

2014-3048

---

Petition for review of an arbitrator's decision in No. 13-02607-3 by Sidney Moreland IV.

---

Decided: March 13, 2015

---

JASON LEONARD ALDRICH, Gattey and Baranic APLC, San Diego, CA, argued for petitioner.

DANIEL S. HERZFELD, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by HILLARY STERN, STUART F. DELERY, ROBERT E. KIRSCHMAN, JR., KIRK MANHARDT.

---

Before DYK, TARANTO, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge*.

Alberto Garcia appeals from an arbitrator's dismissal of his labor dispute for failure to timely file a request for arbitration. The applicable collective-bargaining agreement requires that requests for arbitration of adverse actions "must be filed . . . not later than thirty (30) calendar days after the effective date of [the Agency's] action." The Arbitrator concluded that the term "must be filed" requires actual receipt by the Agency of the request for arbitration. Because we conclude that the request for arbitration need only be mailed within the 30-day time period, we reverse and remand.

I

On May 9, 2013, the Department of Homeland Security issued a final decision removing Mr. Garcia from the U.S. Border Patrol for misconduct. Mr. Garcia received notice of his removal the same day. Under 5 U.S.C. § 7121(e)(1), Mr. Garcia had the option to appeal his removal to the Merit Systems Protection Board (MSPB) or to invoke arbitration, as set out in his union's collective-bargaining agreement (CBA). Article 34, Section A of the CBA states that in cases involving adverse actions, such as removal, requests for arbitration "must be filed . . . not later than thirty (30) calendar days after the effective date of the action." Supp. Auth. 8.

Twenty-eight days after the effective date of Mr. Garcia's removal, his union mailed a letter to the Agency requesting arbitration. The Agency did not receive this request until seven days later. After an arbitrator was appointed, the Agency moved to dismiss the dispute for failure to file within thirty days of the effective date of removal.

The Arbitrator found the plain meaning of "filed" in the CBA requires actual receipt of the request for arbitration. The Arbitrator relied on the definition of "file" used

in federal court proceedings, citing Black's Law Dictionary and judicial opinions interpreting federal procedural statutes. The Arbitrator also found the context in which "filed" is used in the CBA supports this interpretation. Accordingly, the Arbitrator dismissed the dispute for failure to timely file a request for arbitration. Mr. Garcia appeals. We have jurisdiction under 5 U.S.C. § 7121(f) and 5 U.S.C. § 7703(b)(1).

## II

Interpretation of a collective-bargaining agreement is a question of law we review de novo. *Giove v. Dep't of Transp.*, 230 F.3d 1333, 1340 (Fed. Cir. 2000) (citing *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998); *Muniz v. United States*, 972 F.2d 1304, 1309 (Fed. Cir. 1992)). We begin with the plain language of the agreement. *Id.* at 1340. "We give the words in the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning." *Harris*, 142 F.3d at 1467. In addition, we must interpret specific language in light of the contract as a whole. *See McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996) ("We must interpret the contract in a manner that gives meaning to all of its provisions and makes sense.").

The Arbitrator relied on the definition of "file" as used in federal court proceedings to determine the meaning of "filed" here. It is true that federal courts have interpreted "file" in federal procedural statutes to require actual receipt. *See, e.g.*, *United States v. Lombardo*, 241 U.S. 73, 76 (1916) (interpreting "file" in a criminal appeal statute to require actual receipt); *United States v. Doyle*, 854 F.2d 771, 773 (5th Cir. 1988) (interpreting "filed" in federal rules of civil and appellate procedure to require actual receipt); *see also* Black's Law Dictionary (7th ed. 1999) (defining "file" to mean "[t]o deliver a legal document to the court clerk or record custodian for placement into the

official record."). But regulations governing administrative proceedings analogous to the arbitration at issue define "filed" differently. For instance, for the purposes of an appeal to the MSPB, a document is "filed" at the time of mailing. *See* 5 C.F.R. § 1201.4(l) ("The date of filing by mail is determined by the postmark date . . . ."). Similarly, a Federal Labor Relations Authority (FLRA) regulation states, "If the mailing contains a legible postmark date, then that date is the date of filing." 5 C.F.R. § 2429.21(b)(1).

The definitions used in MSPB and FLRA regulations are more relevant to the CBA than the general definition used in federal court. The parties negotiated the CBA's arbitration procedures as an alternative to an administrative appeal to the MSPB. *See* 5 U.S.C. § 7121(e)(1) (giving federal employees the option to raise certain disputes either in an appeal to the MSPB or under a negotiated grievance procedure). This context informs our understanding of the parties' intent. As we have previously recognized, "[i]t is neither reasonable nor logical to assume that the negotiators intended to fix a different date as the filing date for an arbitration appeal" than the date used as the filing date for an MSPB appeal. *Huey v. Dep't of Health & Human Servs.*, 782 F.2d 1575, 1578 (Fed. Cir. 1986) (finding the date the union "initiated" arbitration was the date its request was mailed, consistent with the date of filing used in appeals to the MSPB). Accordingly, the ordinary meaning of "filed" in the context of the CBA only requires mailing, not actual receipt, following the definition of "filed" that would be used in an appeal to the MSPB. *See* 5 C.F.R. § 1201.4(l).

The Agency points to other provisions of the CBA which, it argues, demonstrate the parties' intent to require actual receipt of the request for arbitration within thirty days. In particular, the Agency cites two provisions that establish differing deadlines for requesting arbitration, depending on the type of agency action involved, in

Article 34, Section A of the CBA. The provision for requesting arbitration of suspensions of less than fifteen days and adverse actions, at issue here, requires that requests for arbitration be filed within thirty days of "receipt" of the Agency's Notice of Decision (the adverse-action provision). The provision for requesting arbitration of all other grievances requires calculating the deadline in a slightly different way—fifteen days after the Notice of Decision is personally delivered or mailed, but an additional five days is allowed if mailed (the grievance provision). The Agency thus asks us to draw the inference that because the CBA contains an express reference to the Agency's mailing in the grievance provision, the absence of an express mailing reference in the adverse-action provision indicates that the parties did not intend for the Union's mailing of an arbitration request to constitute filing and therefore meet the thirty-day deadline.

We do not find this inference persuasive. The Agency's service of its final decision and the Union's request for arbitration are two different processes undertaken by two different entities. And read in context, the likely reason for the explicit reference to service by mail in the grievance provision and its omission in the adverse-action provision is the difference in events that cause the Union's submission deadline to begin to run. In the grievance provision, the triggering event is personal delivery or mailing by the Agency. Given the relatively brief fifteen-day deadline, if service is by mail, the provision expressly adds five days to account for any delay that may occur in the Union actually receiving the Agency's decision. In the adverse-action provision, the triggering event is "receipt" of the Agency's decision. Because the deadline does not begin to run until actual receipt, no additional time for service by mail is necessary. Thus, we do not find the lack of a mailing reference in the adverse-action provision to be dispositive. Indeed, if we were strictly parsing the language of the two provisions, we would note that the

grievance provision does not require that a request for arbitration is "filed" before the deadline, but rather it "may be submitted." Supp. Auth. 8. It is therefore difficult to draw any firm conclusions about the meaning of "filed" in the adverse-action provision by comparing it to the language of the grievance provision. At bottom, without any compelling textual evidence to the contrary in the CBA, we conclude that the definition of "filed" should be construed in the same manner as in MSPB proceedings—where a document is filed at the time of mailing. *See* 5 C.F.R. § 1201.4(l).

## III

We conclude the requirement in Article 34, Section A that a request for arbitration "must be filed . . . not later than thirty (30) calendar days after the effective date of [the Agency's] action" is satisfied when the request is mailed before the thirty-day deadline. The parties do not dispute that Mr. Garcia's union mailed a request for arbitration twenty-eight days after the effective date of the Agency's final decision. Accordingly, we reverse the Arbitrator's dismissal for failure to timely file a request for arbitration and remand for further proceedings.

**REVERSED AND REMANDED**

No costs.