NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**JUAN M. GOMEZ-RODRIGUEZ,**
*Petitioner*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

_____

2022-1187

_____

Petition for review of the Merit Systems Protection Board in No. AT-0752-21-0264-I-1.

_____

Decided: May 24, 2023

_____

STEPHAN B. CALDWELL, Stephen B. Caldwell, LLC, Suwanee, GA, argued for petitioner.

SEAN KELLY GRIFFIN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, PATRICIA M. MCCARTHY.

_____

Before MOORE, *Chief Judge*, PROST and STARK, *Circuit Judges.*

STARK, *Circuit Judge.*

Juan M. Gomez-Rodriguez petitions for review of the Merit Systems Protection Board's ("Board") decision affirming his removal as a Department of the Army Civilian Police ("DACP") officer in the Army's Installation Command, Directorate of Emergency Services ("DES") at Fort Gordon, Georgia.  We affirm.

I

As a DACP officer, Gomez-Rodriguez had access to ALERTS, the Army Law Enforcement and Reporting Tracking System.  ALERTS is a database of police investigations and incidents designed for official use only.

As a condition of employment, Gomez-Rodriguez was required to maintain certification in the Individual Reliability Program ("IRP").  The IRP obligates police officers to "maintain a high standard of conduct at all times" and be continuously evaluated in terms of their "character, trustworthiness, and fitness" to ensure they meet "the high standards expected of law enforcement."  J.A. 348 (Army Regulation ("AR") 190-56 ¶¶ 3-3.a. and b).

As we will explain, the Army removed Gomez-Rodriguez based on his misuse of ALERTS and his failure to maintain his IRP certification.

Several investigations preceded Gomez-Rodriguez's removal.  First, pursuant to AR 15-6, the Army investigated an allegation that Gomez-Rodriguez had improperly used ALERTS to obtain information about an alleged crime committed by another officer, Michael Porreca ("AR 15-6 Investigation").  The AR 15-6 Investigation revealed that Gomez-Rodriguez had searched for "Porreca" in ALERTS and accessed a file naming Porreca as a suspect in a larceny

investigation. The Army also discovered that Gomez-Rodriguez had searched in ALERTS for information on another police officer, Cory Burgess.

Second, the Defense Criminal Investigative Service ("DCIS") investigated the time and attendance practices of multiple Fort Gordon DES police officers, including Gomez-Rodriguez ("DCIS Investigation"). The DCIS Investigation revealed discrepancies in the time and attendance records of Gomez-Rodriguez and other officers.

Consequently, on August 19, 2020, the DES Deputy Director sent a memorandum to Gomez-Rodriguez concerning his IRP certification. The Deputy Director stated that, in light of the AR 15-6 and DCIS Investigations, he was offering Gomez-Rodriguez an opportunity to provide input regarding whether he could continue to retain his IRP certification. On August 28, 2020, Gomez-Rodriguez's union, the American Federation of Government Employees, responded with additional information supporting his IRP certification.

On October 19, 2020, the Military Police Director and Provost Marshal notified Gomez-Rodriguez via memorandum that he was being permanently decertified from the IRP because he lacked the "character, trustworthiness, and fitness . . . consistent with the high standards expected of law enforcement and security professionals." J.A. 60 (citing AR 190-56 ¶ 3-3.b). The memorandum referenced the AR 15-6 and DCIS Investigations, as well as an incident that had occurred at Pointes West Army Resort, where Gomez-Rodriguez had been found in possession of a personally owned firearm without the required written permission. Gomez-Rodriguez had not been disciplined for the Pointes West incident.

Also on October 19, 2020, the Deputy Director issued a notice of proposed removal based on two charges: (1) conduct unbecoming a law enforcement officer and (2) failure

to maintain a condition of employment. The specification supporting the first charge stated that Gomez-Rodriguez had improperly searched for Porreca and Burgess in ALERTS without an official purpose or authorization. The specification supporting the second charge alleged that Gomez-Rodriguez had failed to maintain his IRP certification, yet maintenance of such certification was a condition of his employment. In the proposed removal, the Deputy Director explained that he had considered the AR 15-6 and DCIS Investigations, the permanent IRP decertification, and the firearm incident at Pointes West Army Resort. On October 29, 2020, Gomez-Rodriguez submitted a written response and, through his union representative, an oral response to the notice of proposed removal.

On February 4, 2021, the deciding official issued a decision sustaining the two charges and finding the penalty of removal to be adequate and appropriate. On February 10, 2021, Gomez-Rodriguez was removed from his position. On March 3, 2021, he appealed to the Board.

At the Board, an administrative judge ("AJ") held a hearing. Gomez-Rodriguez was among the witnesses who appeared at the hearing. He testified that his ALERTS searches were authorized because they occurred in connection with DUI training he was receiving from Porreca, in the course of which Porreca told the class to search for sample DUI reports Porreca had written. According to Gomez-Rodriguez, his ALERTS search for Burgess was motivated by his desire to understand "his style of writing," as Burgess was his supervisor and would be "reviewing my cases." J.A. 486.

Another witness, Deputy Chief William Russ, testified, however, that the manner in which Gomez-Rodriguez undertook the searches would produce reports related to the criminal investigations of his fellow officers, Porreca and Burgess, rather than to yield reports written by them. The

Board credited Russ' testimony over that of Gomez-Rodriguez and, thus, found that Gomez-Rodriguez had improperly used ALERTS.

The Board also concluded that maintenance of IRP certification was a condition of Gomez-Rodriguez's employment and that his decertification was justified based on information from the AR 15-6 and DCIS Investigations as well as the Pointes West Army Resort firearm incident. The Board rejected Gomez-Rodriguez's contention that the Army had deprived him of due process by considering the DCIS Investigation, finding that the notice of proposed removal had adequately informed him that this investigation had identified significant negligence in his time and attendance records.

Ultimately, the Board found a nexus between the grounds for removal and a legitimate governmental interest in efficiency of the service, and further found that removal was reasonable based on the evidence, despite Gomez-Rodriguez's work record, length of service, previous performance, and lack of disciplinary history. The Board's initial decision, issued by the AJ on September 24, 2021, became final on October 29, 2021. On November 22, 2021, Gomez-Rodriguez timely appealed to this Court. We have jurisdiction under 5 U.S.C. § 7703(b)(1)(A).

II

In reviewing the record and the Board's decision, we must "hold unlawful and set aside any agency action, findings, or conclusions found to be – (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

On appeal, Gomez-Rodriguez argues (1) substantial evidence does not support either charge against him; (2) the

Board did not apply the law for disparate penalties; and (3) he was denied due process.[1]  We address each contention in turn.

## A

Gomez-Rodriguez was charged with conduct unbecoming a law enforcement officer and failure to maintain a condition of employment.  "[W]hen an agency uses such general charging language, the Board must look to the specification to determine what conduct the agency is relying on as the basis for its proposed disciplinary action." *Russo v. U.S. Postal Serv.*, 284 F.3d 1304, 1308 (Fed. Cir. 2002).  Here, the specifications supporting the charges explained in detail that (1) Gomez-Rodriguez improperly searched for Porreca and Burgess in ALERTS without an official purpose or authorization, and (2) Gomez-Rodriguez was permanently decertified from the IRP, yet maintenance of such certification was a condition of his employment.  Based on the evidence presented, which largely consisted of the testimony of Deputy Chief Russ and Gomez-Rodriguez, the Board determined that Gomez-Rodriguez's ALERTS searches for Porreca and Burgess were improper because they were unauthorized and not for an official purpose.  The Board further found that IRP certification was a condition of Gomez-Rodriguez's employment, so his permanent IRP decertification barred his continued employment.

---

[1]   Gomez-Rodriguez had also argued to the Board that the Army discriminated against him based on race and nationality, but these issues are not before us because he did not raise them on appeal.  *See generally Toyama v. Merit Sys. Prot. Bd.*, 481 F.3d 1361, 1365 (Fed. Cir. 2007) (noting that appeals from Board to this court are available where appellant is "willing to waive discrimination issues"); 5 U.S.C. § 7703(b)(2).

Substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), supports the Board's determinations that both charges against Gomez-Rodriguez were proven by the requisite preponderance of the evidence. "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

Both Deputy Chief Russ and Gomez-Rodriguez testified before the AJ about the ALERTS searches Gomez-Rodriguez performed. According to Russ, the way in which Gomez-Rodriguez conducted the searches would not have resulted in reports authored by other officers, for example Porreca, but instead "would only bring up their criminal history." J.A. 444. Gomez-Rodriguez gave the AJ a different account, insisting he was only looking for reports *written by*, and not *about*, Porreca and Burgess. J.A. 476. The state of the record called upon the AJ to make a credibility finding, and she did so, explaining that Russ – who "helped develop the [ALERTS] program" and was "knowledgeable of the database" – was "straightforward and direct in his testimony" and exhibited a "demeanor throughout [that] was confident and assured," while, "[i]n contrast," Gomez-Rodriguez's testimony was "less than forthright" and left "the impression that he would say whatever is necessary to save his position." J.A. 15.

While the AJ could have credited Gomez-Rodriguez's testimony and found for him, she was likewise free to credit the contrary evidence and find against him. *See King v. Dep't of Health & Hum. Servs.*, 133 F.3d 1450, 1453 (Fed. Cir. 1998). We will not disturb such credibility determinations where, as here, they are not "inherently improbable or discredited by undisputed evidence or physical fact."

*Hanratty v. Dep't of Transp.*, 819 F.2d 286, 288 (Fed. Cir. 1987).

It is true, as Gomez-Rodriguez emphasizes, that Porreca acknowledged he had told Gomez-Rodriguez (and other members of his DUI class) to use Porreca's name to search ALERTS. This does not, however, undermine the AJ's finding that the details of Gomez-Rodriguez's particular searches show he was searching in a manner distinct from what Porreca had directed. The AJ credited Deputy Chief Russ' testimony about the specifics of Gomez-Rodriguez's searches, including that he had searched "Porreca" three times, and rejected Gomez-Rodriguez's competing account. The AJ's credibility determination and Russ' testimony constitute substantial evidence for the finding that Gomez-Rodriguez's searches were improper and unauthorized.

Gomez-Rodriguez also argues there were no standard procedures concerning authorized or unauthorized ALERTS usage at Fort Gordon. While the record shows that the standards were clarified in the course of the investigations and audits relating to this case, *see, e.g.*, J.A. 83 (June 2021 Memo stating: "Unauthorized usage of ALERTS is exceeding access by reviewing information that you do not have a need to know about and providing information to others without a need to know, or an official purpose."), the impropriety of Gomez-Rodriguez's conduct was already sufficiently clear at the time he undertook his searches. For example, at that time, Gomez-Rodriguez was subject to limitations described in the Guidelines from the Office of the Provost Marshal General relating to AR 190-45, which provided (among other things): "Unauthorized use, which includes requests, dissemination, sharing, copying or receipt of information within . . . ALERTS, could result in civil proceedings against . . . any user . . . . Violations or misuse may also subject the user . . . to administrative sanctions and possible disciplinary action by their

command . . . ." Suppl. App. 1.  Additionally, each ALERTS user saw one or more screens notifying the user that ALERTS is to be used only for official use on a need-to-know basis, with due consideration for sensitive and personal information.  J.A. 111, 113, 630-31; *see also* J.A. 442-43 (Deputy Chief Russ testifying that "[o]n the original screen, before you log into Alerts it lists that this is for official use only, law enforcement").  Investigator Jack Frost and Deputy Chief Russ also testified that official use of ALERTS meant "for law enforcement purposes."  J.A. 436; *see* J.A. 432 ("[I]t was . . . unofficial, which means it was unauthorized.") (ellipses in original), 434 ("The authorized use comes from a need to know, and you know, not using it for personal . . . use.") (ellipses in original); *see also* J.A. 466 (Hugh Hardin, deciding official, testifying that "accessing of the ALERTS database without an official law enforcement purpose did constitute an unauthorized, inappropriate use of the system").

With respect to the IRP certification charge, it is undisputed that maintaining IRP certification was a condition of Gomez-Rodriguez's employment.  Gomez-Rodriguez also does not dispute that he was decertified.  Plainly, then, substantial evidence supports the Board's decision to sustain the Army's finding on the second charge.

Therefore, we conclude that substantial evidence supports the Board's findings sustaining both charges brought against Gomez-Rodriguez.

B

Gomez-Rodriguez has not shown that the Board erred in its application, or non-application, of the law concerning disparate penalties and comparators.

The relevant *Douglas* factor is the "consistency of the penalty with those imposed upon other employees for the same or similar offences."  *Douglas v. Veterans Admin.*, 5

M.S.P.B. 313, 332 (1981). As part of a challenge to the reasonableness of a penalty, an employee looking "[t]o establish disparate penalties" "must show that the charges and circumstances surrounding the charged behavior [of himself] are substantially similar [to those of others], which includes proof that the proffered comparator . . . was subjected to the same standards governing discipline." *Miskill v. Soc. Sec. Admin.*, 863 F.3d 1379, 1384 (Fed. Cir. 2017) (internal quotation marks omitted). Evaluation of a disparate penalties contention entails, "by [its] nature, a case-dependent, highly factual inquiry . . . not amenable to bright-line rules." *Id.*

Gomez-Rodriguez's disparate penalties argument fails, first, because it is forfeited. At no point before the Board did Gomez-Rodriguez contend that specific Army employees conducted unauthorized ALERTS searches and the Army then treated these similarly situated employees more leniently, thereby rendering the removal of Gomez-Rodriguez unreasonable in light of the *Douglas* factors.

To avoid forfeiture and be available for appellate review, an issue first "must be raised with sufficient specificity and clarity that the tribunal [being reviewed] [wa]s aware that it must decide the issue." *Wallace v. Dep't of the Air Force*, 879 F.2d 829, 832 (Fed. Cir. 1989). Having reviewed the record citations to which Gomez-Rodriguez directs us, *see* Appellant's Supp. Br. at 2, we find no instance in which he put the Board on notice that he was challenging the reasonableness of the penalty of removal on the basis that it was inconsistent with discipline imposed on others for similar misconduct.

Shortly before the hearing, Gomez-Rodriguez filed a motion to put before the Board the Army's June 9, 2021 Memorandum ("June 2021 Memo") entitled, "Findings and Recommendations for Army Regulation (AR) 15-6 Investigation – Alleged Improper Usage of Army Law

Enforcement Reporting and Tracking System," which was based on audits undertaken in November 2020 and May 2021. J.A. 66, 80-85. So the Board had in its record the June 2021 Memo, which reports that the audit found (in addition to Gomez-Rodriguez's searches) 11 instances over a three-year period in which a total of five DES officers searched ALERTS for data on other DES employees. J.A. 80-85. The June 2021 Memo does not show what discipline, if any, these other officers received, but it does recommend one of them for "administrative action." J.A. 85.[2]

Even assuming that Gomez-Rodriguez's motion was intended to put the Board on notice that he was making a disparate penalties argument,[3] it is easy to understand

---

[2]    While the June 2021 Memo was prepared too late to be considered by the deciding official, Hardin, at the time he ordered the removal of Gomez-Rodriguez in February 2021, Gomez-Rodriguez was free to ask the Board to consider it in weighing the *Douglas* factors. *See Norris v. Sec. & Exch. Comm'n*, 675 F.3d 1349, 1357 (Fed. Cir. 2012). As we explain, however, he failed to raise the issue with sufficient specificity and clarity to make the Board aware it was an issue it needed to decide. *See Wallace*, 879 F.2d at 832.

[3]    Gomez-Rodriguez's motion to add the June 2021 Memo to the AJ hearing record refers to a "Union Exhibit C" – which the parties do not appear to have included in their joint appendix – which he describes as "the Audit report of all users that accessed Officer Porreca's name and other names." J.A. 67. This is likely a November 2020 list prepared by Deputy Chief Russ identifying all the officers who searched ALERTS for the names of DES employees, which served as the starting point for the further investigation that resulted in the June 2021 Memo. *See* Appellant's Br. at 10 ("The May 12, 2021 Audit served to clarify

the November 16, 2020 Audit.").  Gomez-Rodriguez's motion then suggests that the June 2021 Memo "contains relevant information and gives context to Union Exhibit C," adding:

> Under the Douglas[] factors that the Agency did not consider, it goes to the Clarity of Notice that the Appellant was on as to what defines Routine use.  Further, it explains penalties to those interviewed for a proper comparator analysis.  This new Report [i.e., the June 2021 Memo] gives context to those names to properly make a comparator analysis like New AR-15 Findings.

J.A. 67 (internal emphasis omitted).  Later the motion states:

> Here, the Union has introduced Exhibit C, an Audit of all those police officers in DES at For[t] Gordon that accessed Officer Porreca's name.  The Audit by itself does not allow this Court to make proper comparisons for d[i]sp[a]rate discipline as the Appellant has raised as a defense.  This new AR-15 Report presents findings and interviews of those that accessed Officer Porreca's name, their reasons, and if they have been disciplined for that action.  Without this Report, this Court cannot properly give context around to the names listed in Union Exhibit C to make the proper comparator analysis for a decision.

J.A. 69.  Despite the motion's references to a "proper comparator analysis," neither in the motion nor anywhere else

how the Board could have missed it. The motion identifies by name only one other officer, Elvis Rondon, J.A. 67-68, who the June 2021 Memo reports "searched his supervisor's name in ALERTS to find narrative statements as part of his official duties." J.A. 83. The report does not state or even suggest that Rondon's search was inconsistent with his supervisor's instructions, making it difficult (if even possible) to discern that Gomez-Rodriguez believed Rondon was a proper comparator.

During the Board hearing before the AJ, counsel for Gomez-Rodriguez examined the deciding official, Hugh Hardin, on the issue of comparators. Hardin was asked whether, assuming hypothetically he had been presented comparators, he would have considered them in deciding how to discipline Gomez-Rodriguez, to which Hardin said he would. J.A. 469. Hardin further explained the reality that Gomez-Rodriguez "was the only one that was presented to me for conduct unbecoming with the underlying action of searching ALERTS inappropriately in an unauthorized manner." *Id.* Counsel for Gomez-Rodriguez also questioned his own client about comparators. J.A. 483. Gomez-Rodriguez interpreted the November 2020 audit as identifying 14 officers who had conducted ALERTS searches just as he had, and yet, to his knowledge, none of them "faced discipline or removal." *Id.* There is, however, no documentary support in the record for these contentions and Gomez-Rodriguez never used his (or any other) testimony to develop an argument.

Given Gomez-Rodriguez's failure to articulate his *Douglas* comparator argument with any clarity, the Army

---

did Gomez-Rodriguez clearly identify the purportedly proper comparators, state that they were treated differently from himself, or ask the Board to determine he was subjected to a disparate penalty.

was never alerted to the prospect that it needed to develop a record with respect to the purported comparators. As a result, the Board was not provided by either party with the evidence on which such a highly fact-specific issue needs to be decided. And, again, the Board was not made aware by Gomez-Rodriguez that it had to decide the *Douglas* comparator issue to resolve this case. Accordingly, Gomez-Rodriguez forfeited the comparator contention he seeks to press on appeal.

In any event, even if Gomez-Rodriguez had adequately presented the *Douglas* comparator issue to the Board, we would still affirm. As an initial matter, the Board did not completely overlook the evidence of the other 11 searches of DES employee names in ALERTS. Instead, the Board expressly referenced Deputy Chief Russ' testimony that "he was asked to audit ALERTS for searches by officers, that the audit covered three years' worth of searches, and that the audit revealed additional officers had conducted name searches of individuals [working] in DES." J.A. 23. While the Board did not go on to address this evidence in connection with its *Douglas* analysis,[4] we will not presume that the Board entirely failed to consider the comparator evidence. *See Medtronic, Inc. v. Daig Corp.*, 789 F.2d 903, 906 (Fed. Cir. 1986) ("We presume that a fact finder reviews all the evidence presented unless [it] explicitly expresses otherwise.").

More importantly, Gomez-Rodriguez has failed to persuade us that his comparator evidence supports a

---

[4]    Gomez-Rodriguez's contentions regarding unequal treatment largely went to his race and nationality discrimination claims, which the Board did explicitly address, and the rejection of which is not before us on appeal. J.A. 23-24.

conclusion that his removal was unreasonable. As already noted, Gomez-Rodriguez did not present sufficient evidence of what (if any) discipline was imposed on other employees for the same or similar offenses he committed. There was no evidence before the Board that others who conducted unauthorized ALERTS searches received less harsh penalties.

Moreover, the only evidence Gomez-Rodriguez points to, the June 2021 Memo, explains that five other officers conducted ALERTS searches on DES employees, and of them only one – Officer Hockenbery – was even arguably similarly situated, and that officer was recommended for administrative action. J.A. 82-85. The other four officers were either instructed by a superior to conduct the search in question (Keim) or did the searches as part of their official duties (Darby, Peloquin, Rondon). *Id.*; *see also* J.A. 74 (Army approving investigating officer's findings and referring for further consideration the question of "what, if any, disciplinary action is appropriate for Sergeant Rory Keim and Sergeant Scott Hockenberry"). In short, Gomez-Rodriguez has not shown that any similarly-situated officer (i.e., one who conducted an unauthorized ALERTS search) was treated differently (i.e., less harshly) than him. *See Miskill*, 863 F.3d at 1384 ("To establish disparate penalties, the employee must show that the charges and circumstances surrounding the charged behavior are substantially similar.").[5]

---

[5] We note that if Gomez-Rodriguez had presented the issue with sufficient specificity, and if the record had shown similarly situated employees who were potentially treated less harshly, the burden would then have shifted to the agency to "prove a legitimate reason for the difference in treatment by a preponderance of the evidence." *Miskill*,

16                                    GOMEZ-RODRIGUEZ v. ARMY

Thus, again, we affirm the Board's finding that the penalty of removal was reasonable.

C

Gomez-Rodriguez has also failed to show that he was denied due process. He argues that the Army's notice of proposed removal and its decision to remove him did not inform him that the IRP memorandum was the basis of the charge. He further contends that the Board improperly relied on the specification in the first charge (improper ALERTS usage) to sustain the second charge (IRP decertification).

To meet the requirements of due process, Gomez-Rodriguez had to be provided notice and an opportunity to be heard. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985); *see also* 5 U.S.C. § 7513(b) (setting out statutory requirements of notice and opportunity to be heard). Notice requires provision of sufficient detail so an employee may provide an informed response. *See, e.g.*, *LaChance v. Merit Sys. Prot. Bd.*, 147 F.3d 1367, 1371 (Fed. Cir. 1998).

Due process was satisfied here. The notice of proposed removal outlined the two charges, along with their respective specifications (improper ALERTS usage and IRP decertification). The notice referenced the DCIS Investigation and the Pointes West Army Resort incident, although it did not identify them as bases for removal. The notice identified the IRP certification requirement and that Gomez-Rodriguez was decertified. Gomez-Rodriguez was given the opportunity to respond to the charges in the notice, and he did so.

---

863 F.3d at 1384. Here, because of Gomez-Rodriguez's failings the burden did not shift to the Army.

Nor was there any improper reliance by the Board on the first charge in deciding to sustain the second charge. The substance of the Board's findings on both charges tracked how the charges were made in the notice of proposed removal. The two charges were related – that is, at least part of the reason Gomez-Rodriguez lost his IRP certification was due to his ALERTS searches – and the deciding officer candidly acknowledged that had Gomez-Rodriguez not improperly accessed ALERTS, the second charge would likely not have been applicable. J.A. 472. But none of this provides the basis for a meritorious due process claim.

In sum, Gomez-Rodriguez was notified of the Army's reasons for its proposed actions and had an opportunity to respond. "Those are the limits of our review." *Adams v. Dep't of Def.*, 688 F.3d 1330, 1334 (Fed. Cir. 2012).

## III

We have considered Gomez-Rodriguez's additional arguments and find them unpersuasive. For the foregoing reasons, we affirm.

### AFFIRMED

Costs

No costs.